1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JACK BRENE KIRCH,

11              Petitioner,                No. CIV-S-02-0495 GEB KJM P

12        vs.

13   M.C. KRAMER, Warden,                  AMENDED

14              Respondent.                FINDINGS AND RECOMMENDATIONS[1]

15   _____/

16              Petitioner is a state prisoner proceeding with counsel with an application for writ

17   of habeas corpus under 28 U.S.C. § 2254.  Petitioner, who challenges his 1996 Siskiyou County

18   conviction for voluntary manslaughter, currently is serving a sentence of fifteen years

19   imprisonment in the California Department of Corrections.

20   /////

21   /////

22

23        [1] On March 18, 2005, the court issued findings and recommendations with respect to
petitioner's application for writ of habeas corpus.  On March 30, 2005, petitioner filed objections
24   to the findings and recommendations.  In response to the objections, the court ordered further
briefing with respect to petitioner's claim that his sentence violates the Fifth and Fourteenth
25   Amendments.  The parties have submitted further briefing and the court addresses the briefing in
section III. E. 2 below.  The court has made other modifications to the original findings and
26   recommendations, but still recommends that relief be denied as to all of petitioner's claims.

1

I. <u>Background</u>

After trial, petitioner appealed his conviction to the California Court of Appeal.

The Court of Appeal summarized the facts related to petitioner's conviction as follows:

> In the early morning hours of June 13, 1995, the defendant shot Sean Burbary in the head, killing him instantly.  The incident occurred just before 1:30 a.m. on Mott Road, just north of Dunsmuir, California.  The prosecution asserted that the crime was an execution-style slaying, the victim having been shot in the head while he was seated on the roadway with his arms raised.  The defendant maintained that he shot the victim in self defense.  Both sides produced an array of experts to testify as to the position of the body, the pattern of blood splatters, the size and position of the fatal wound, and whether the decedent was capable of any movement after being shot.
>
> Shortly before the shooting, 19-year old Brandy Taylor renewed her acquaintance with the defendant, whom she saw socially several times in the days prior to the shooting.  The victim had been romantically involved with Ms. Taylor since his move to Siskiyou County from Southern California in November 1994.  The victim was 18 years old.  He related to Ms. Taylor that he had been in a gang when he lived in Southern California and bragged that he had killed a Mexican in Los Angeles.  Ms. Taylor related these stories to the defendant.
>
> On the eve of the shooting, Ms. Taylor invited the defendant to a barbecue at her home at the Chateau Shasta Trailer Court.  At some point during the evening, the defendant joked that he would like to take the victim hunting, implying that he would like to shoot him.  This was not the first time the defendant had expressed this sentiment.  He had previously told one of Ms. Taylor's friends that he "wanted to take Sean out and hunt him like an animal . . . ."
>
> The victim was not invited to the barbecue, but upon being informed that Ms. Taylor had invited another man, went to the mobile home to talk to her.  Ms. Taylor hid from the victim and prevailed upon her mother to tell the victim that she was not at home.  The victim left.
>
> Later, the victim called and spoke with Ms. Taylor.  He asked if he could come over.  She said yes.  He asked to speak to the defendant.  Ms. Taylor gave the defendant the phone.  She testified that she heard the defendant say "All I'm doing is eating dinner here and watching a movie with (Ms. Taylor's) uncle."  The defendant testified that during this phone conversation the victim said, "I am going to fucking kill you, you motherfucker.  I'm not from around here.  I don't play around.  I pulled the trigger before, I'll do it again.  Brandy's my girl.  If I can't have her, no one will.

2

Don't let me catch you around.  I am going to get you and hurt you good.  You understand?"

After this conversation, Ms. Taylor testified that the defendant was so angry he was shaking.  The defendant testified that he was shaking from fear.  Ms. Taylor testified that the defendant told her he was going to go get his car because he didn't want to get his new pickup messed up, and ordered her to bring the victim to Lake Siskiyou or the defendant would never see her again.  The defendant then left.  As is later made apparent, he went home, changed vehicles, and obtained one of his shotguns and ammunition.

Later, Ms. Taylor was talking to the victim outside her trailer.  The defendant drove by slowly.  He was no longer driving his new pickup, but instead was driving his brown Pinto.  Ms. Taylor testified that she told the victim she would not see him anymore unless he quit doing drugs and spent more time with her.  Both Ms. Taylor and her mother testified that the victim was depressed and sad when he left.

The defendant testified that he left the trailer park after observing Ms. Taylor and the victim and parked somewhere to "calm down."  He then made another pass through the trailer park, did not see either the victim or Ms. Taylor, and headed home.  He was stopped by a train at the railroad crossing.  He then realized that the vehicle in front of his was the victim's.  The victim saw him, even though the defendant had turned off his lights to avoid being noticed.  The victim got out of his vehicle, walked back to the defendant, and said, "Follow me.  I want to talk to you."  The defendant followed.  When the victim motioned for the defendant to pull over, the defendant loaded his shotgun.  The victim opened his door and ran back toward the defendant.  The defendant testified: "His hands, he was turned sideways with, [sic] as if he was concealing something that I couldn't see.  Both hands were to his side, and he was turned sideways running towards my vehicle, the driver's door."  The defendant, thinking that the victim had either a gun or a knife in his hands, exited his vehicle, and shot the victim in the head.  The shot entered just below the victim's left ear, and exited through his right cheek.  When the victim's body was found, it was lying on its back, with the arms raised above the head, and a cigarette still clenched between the fingers.  The victim's truck was still running, and the lights were on when the officers arrived.  The victim was not armed.[fn]

Later the same night, Ms. Taylor invited the defendant to her home.  They drove around in the defendant's truck.  When Ms. Taylor asked the defendant whether he was angry, he replied that he didn't have anything to be mad about anymore.  Ms. Taylor testified that the defendant seemed normal.

1  2  3

When an officer arrived at the defendant's place of work the next morning, the defendant at first denied knowing anything about the shooting.  Eventually he admitted to the shooting.  Defendant led officers to the shotgun he had used in the shooting, which he had thrown in a pond near his home.

4  5  6  7

The jury convicted the defendant of the lesser included offense of voluntary manslaughter and found true the allegation of personal use of a firearm in the commission of the offense.  The court sentenced the defendant to the upper term of 11 years for voluntary manslaughter, and the middle term of four years on the firearm use enhancement.

-----

8  9

[fn] A closed folding knife was found in the victim's right pants pocket.

10  Answer, Ex. B at 2-5.  Petitioner's conviction and sentence were affirmed on appeal.  Id. at 12.

11  Petitioner then sought leave to appeal the California Court of Appeal's decision in the California

12  Supreme Court.  Answer, Ex. C.  The California Supreme Court denied petitioner's request.  Id.

13  After direct review, petitioner filed several requests for collateral relief in California courts.

14  Answer, Exs. D-O.  All of those requests were denied.  Id.

15  II.  Availability Of Habeas Corpus Relief

16          An application for a writ of habeas corpus by a person in custody under a

17  judgment of a state court can be granted only for violations of the Constitution or laws of the

18  United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any

19  claim decided on the merits in state court proceedings unless the state court's adjudication of the

20  claim:

21  22

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

23  24

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

25  28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro,

26  365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief

1   under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth

2   Amendment rights and that § 2254(d) does not preclude relief).  See also Lockyer v. Andrade,

3   538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore

4   did not address the merits of petitioner's Eighth Amendment claim).[2]  Courts are not required to

5   address the merits of a particular claim, but may simply deny a habeas application on the ground

6   that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v.

7   Lindsey, 212 F.3d 1143, 1154-55 (9th Cir 2003) in which the Ninth Circuit required district

8   courts to review state court decisions for error before determining whether relief is precluded by

9   § 2254(d)).  It is the habeas petitioner's burden to show that he is not precluded from obtaining

10   relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

11        The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

12   different.  As the Supreme Court has explained:

13        A federal habeas court may issue the writ under the "contrary to"
     clause if the state court applies a rule different from the governing
14        law set forth in our cases, or if it decides a case differently than we
     have done on a set of materially indistinguishable facts.  The court
15        may grant relief under the "unreasonable application" clause if the
     state court correctly identifies the governing legal principle from
16        our decisions but unreasonably applies it to the facts of the
     particular case.  The focus of the latter inquiry is on whether the
17        state court's application of clearly established federal law is
     objectively unreasonable, and we stressed in Williams [v. Taylor,
18        529 U.S. 362 (2000)] that an unreasonable application is different
     from an incorrect one.

19

20   Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

21   law set forth in Supreme Court cases, or unreasonably apply such law if the state court simply

22   _____

23        [2] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
     held in a § 2254 action that "any independent opinions we offer on the merits of constitutional
     claims will have no determinative effect in the case before us . . .  At best, it is constitutional
24   dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain
     relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title
25   28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation
     of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71;
26   Ramirez, 365 F.3d at 773-75.

1   fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

2   (2003).

3         The court will look to the last reasoned state court decision in determining

4   whether the law applied to a particular claim by the state courts was contrary to the law set forth

5   in the cases of the United States Supreme Court or whether an unreasonable application of such

6   law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

7   919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

8   of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

9   must perform an "independent review of the record to ascertain whether the state court decision

10  was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

11  words, the court assumes the state court applied the correct law, and analyzes whether the

12  decision of the state court was based on an objectively unreasonable application of that law.

13        It is appropriate to look to lower federal court decisions to determine what law has

14  been "clearly established" by the Supreme Court and the reasonableness of a particular

15  application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

16  III.  Analysis

17        A.  Ineffective Assistance Of Counsel (Section 1)

18        Petitioner argues his trial attorney rendered ineffective assistance of counsel by

19  failing to attempt to introduce evidence that two passers-by took guns from the scene of the

20  shooting, giving rise to an inference that the victim was armed.  Pet., Section 1 at 83-87.[3]  In

21  order to prevail on his claim of ineffective assistance of counsel, petitioner must show two

22  things:  an unreasonable error and prejudice flowing from that error.

23

24        [3] Unless otherwise noted, all citations to pages of the petition herein are to consecutive
    pages of the "sections" attached to the petition and incorporated by petitioner as articulating the
25  five grounds on which he seeks relief.  In construing petitioner's claims, the court has reviewed
    each section carefully; although the sections are voluminous, the claims as set forth in the court's
26  analysis fairly represent the points petitioner makes in his filing.

1    First, petitioner must show that, considering all the circumstances, counsel's

2  performance fell below an objective standard of reasonableness.  <u>Strickland v. Washington</u>, 466

3  U.S. 668 (1984).  The court must determine whether in light of all the circumstances, the

4  identified acts or omissions were outside the wide range of professionally competent assistance.

5  <u>Id</u>. at 690.  "Review of counsel's performance is highly deferential and there is a strong

6  presumption that counsel's conduct fell within the wide range of reasonable representation."

7  <u>United States v. Ferreira-Alameda</u>, 815 F.2d 1251 (9th Cir. 1986).

8    Second, petitioner must prove prejudice.  <u>Strickland</u>, 466 U.S. at 693.  The focus

9  of the prejudice analysis is on "whether counsel's deficient performance renders the result of the

10 trial unreliable or the proceeding fundamentally unfair."  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372

11 (1993).

12    In his application, petitioner points to police interviews with two inmates,

13 Cherrick and Sweeney, who were housed with petitioner before petitioner was convicted.  Pet.,

14 Section 1 at 83-84; <u>see</u> CT 397.  Sweeney had been convicted of burglary and was petitioner's

15 cellmate.  <u>Id</u>.  Cherrick was housed in the same unit as petitioner.  <u>Id</u>.  Both inmates apparently

16 had informed police officers that they had learned independently from other men named Teran

17 and Long that Teran and Long happened upon the scene of the shooting shortly after the victim

18 was shot and removed guns from the scene.  Pet'r's Dec. 22, 2004 Mot. to Expand (Mot. to

19 Expand), Exs. 1A at 14-15 & 3A at 3.  Teran testified at trial that he did not take anything from

20 the scene of the murder and that he did not see Long take anything.  RT 1679:12-19.  Now, Teran

21 declares that after petitioner's trial Long told him he had taken a gun or guns from the scene.

22 Mot. to Expand, Ex. 4.  Long was not called as a witness.[4]  In his traverse, petitioner claims Ben

23 Osborne, another county jail inhabitant when petitioner was there, sold a 9mm pistol to the

24 victim and sawed off the barrel of a shotgun for him.  Traverse at 12:25-14:5; <u>cf</u>. Mot. to Expand,

25

26    [4]  For what the record includes with regard to Long's position on the question of whether
he took anything from the murder scene, <u>see</u> note 15 <u>infra</u>.

1   Ex. 2A.[5]  Petitioner claims defense counsel should have called Cherrick, Sweeney and Osborne

2   to testify at trial.

3                Counsel did not venture outside of the "wide range of reasonable representation"

4   by not calling Cherrick, Sweeney and Osborne.  All three, collectively and individually, could

5   have been subject to serious credibility challenges.  They all were in jail together and there is

6   nothing in the record before this court, except for "new" information provided by Teran, that

7   corroborates their collective story.  Additionally, none of these witnesses could have provided

8   any evidence placing a weapon on or within immediate reach of the victim at the time he was

9   killed.[6]  It was reasonable for counsel to conclude that calling Cherrick, Sweeney and Osborne

10  was not worth the risk of jurors believing that petitioner, Cherrick, Sweeney and Osborne had

11  concocted their story while in jail together, thereby jeopardizing petitioner's credibility.  Cf.

12  Jackson v. Calderon, 211 F.3d 1148, 1157 (9th Cir. 2000) (decision to avoid risk of "opening

13  door" to unfavorable information deemed a reasonable judgment call).  Furthermore, petitioner's

14  case was not prejudiced.  Even had Cherrick, Sweeney and Osborne been called, the outcome of

15  this case is not likely to have been any different considering the three witnesses' exposure to

16  attacks on their credibility and, more importantly, the fact that they had no evidence to offer

17

18        [5] In his motion to expand, petitioner also provides evidence indicating Osborne was only
    present when the gun was sold to someone named Jim Bowie, who later sold the gun to the

19  victim.  Mot. to Expand, Ex. 2B.

20        [6] Self defense was defined to the jury, in part, as follows:

21              A bare fear of death or great bodily injury is not sufficient to justify
                a homicide.  To justify taking the life of another in self-defense, the

22              circumstances must be such as to excite the fears of a reasonable
                person placed in a similar position, and the party killing must act

23              under the influence of such fears alone.  The danger must be
                apparent, present, immediate and instantly dealt with, or must so

24              appear at the time to the slayer as a reasonable person, and the
                killing must be done under a well-founded belief that it is

25              necessary to save one's self from death or great bodily injury.

26  CT 831.  The possible presence of a gun at the scene of the shooting does not automatically turn
    the victim into an immediate threat.

1    regarding the position of any guns at the time of the shooting.[7]

2        B. Exclusion Of Evidence (Section 1)[8]

3            Petitioner claims the trial court should not have excluded evidence concerning the

4    victim's bad character and the fact that a witness had been convicted of driving under the

5    influence of alcohol.  Pet., Section 1 at 89-91  State court evidentiary rulings cannot serve as a

6    basis for habeas corpus relief unless federal constitutional rights are affected.  Tinsley v. Borg,

7    895 F.2d 520, 530 (9th Cir. 1990).  A violation of the Due Process Clause of the Fourteenth

8    Amendment occurs if a state court evidentiary ruling rendered a trial arbitrary and fundamentally

9    unfair.  Burnsworth v. Lewis, 21 F.3d 1111 (9th Cir. 1994) (citing Jammal v. Van de Kamp, 926

10   F.2d 918, 920 (9th Cir. 1991)).  A fair trial includes "the opportunity to be heard."  Crane v.

11   Kentucky, 476 U.S. 683, 690 (1986).  But "the opportunity to be heard" does not provide a

12   criminal defendant with license to say or present anything he pleases.  Courts will not find that a

13   due process violation has occurred based on the exclusion of evidence proffered by the defense if

14   the excluded evidence was, among other things, marginally relevant or repetitive.  See id. at 689-

15   90.

16           Petitioner asserts the trial court should have admitted evidence regarding the

17   victim's gang affiliation and his possible involvement in a shooting in Southern California.  The

18   specific evidence he suggests should have been admitted includes his own statement after arrest,

19   in which he described the victim's threats made to him shortly before the shooting, and the

20   testimony of a gang expert who had researched the victim's criminal history.

21           Petitioner has not shown that the exclusion of this evidence was improper, taking

22   into account the entire trial record.  What mattered in this case, given petitioner's assertion of self

23

24        [7] Cf. page 4, lines 8-9 supra.

25        [8] In objections to the original findings and recommendations, petitioner's counsel asserts
     claim 1 is an exclusion of evidence claim.  Although the petition itself is not so clear, the court
26   accepts counsel's clarification and analyzes the claim as such.

                                            9

1   defense, was how petitioner perceived the victim.  The jury was presented with evidence through

2   the testimony of Brandy Taylor indicating that Ms. Taylor informed petitioner of the victim's

3   gang membership and that the victim had killed another person.  RT at 670:4-8, 685:17-23.

4   Evidence also was admitted that petitioner perceived the victim as a gang member and someone

5   who had killed someone.  See, e.g., RT 670:4-9, 1730:13-20, 1736:25-1737:9, 1738:25-1739:5,

6   1744:24-1745:9.  There is no indication that further evidence reiterating these points would have

7   altered the nature of the case that went to the jury.

8          Petitioner also claims he should have been allowed to impeach witness Kramm, a

9   Siskiyou County Sheriff's Department Investigator, with the fact that Kramm had been convicted

10  of misdemeanor drunk driving and was on probation at the time he testified.  Petitioner fails to

11  point to anything in support of the proposition that the introduction of such evidence would have

12  undermined determinative evidence provided by Kramm, or had more than marginal relevance to

13  the matters at issue at petitioner's trial.[9]

14          C. Attorney-Client Privilege (Section 1)

15          Petitioner claims his trial counsel, thinking he had a plea deal finalized, informed

16  the prosecution that petitioner began shaking when petitioner learned there was a witness to the

17  shooting at issue in his case.  Pet., Section 1 at 92:19-21.  Petitioner also claims trial counsel

18  turned over some notes written by petitioner to the prosecution.  Id. at 93:13-15.  Petitioner

19  claims counsel's actions, which petitioner asserts violated the attorney-client privilege,[10] amount

20

21          [9]  Moreover, under California law, a misdemeanor conviction is inadmissible hearsay
    when offered to impeach a witness's credibility.  See People v. Lopez, 129 Cal. App. 4th 1508,

22  1522 (6th Dist. 2005); Cal. Evid. Code § 787.  If prior misdemeanor conduct reflects moral
    turpitude, the conduct may provide the basis for impeachment.  Lopez, 129 Cal. 4th at

23  1522.  In this case, petitioner provides no information to suggest that the conduct underlying
    Kramm's drunk driving conviction involved moral turpitude.  Cf. In re Kelley, 52 Cal. 3d 487

24  (1990) (drunk driving convictions do not establish moral turpitude per se).

25          [10]  The Constitution does not explicitly provide protection for an "attorney-client
    privilege," and the Supreme Court has never found there to be such protection provided for in the

26  Constitution.  Maness v. Meyers, 419 U.S. 449 (1975); Beckler v. Superior Court, 568 F.2d 661
    (9th Cir. 1978).

1    to violations of petitioner's Sixth and Fourteenth Amendment rights.

2          As noted by petitioner in his habeas application, petitioner indicates that when he

3    was asked by the prosecution about the shaking incident, petitioner denied it.  RT 1896:7-25.

4    After petitioner denied it, the prosecution did not follow up.  With respect to the "shaking"

5    question, petitioner asserts he was prejudiced just by the asking of the question.  Jurors were

6    instructed, however, that such questions were not to be considered as evidence.  RT 2382:23-26.

7    It is generally presumed that jurors follow the court's instructions regarding whether, and in what

8    respect, something can be considered evidence.  See Aguilar v. Alexander, 125 F.3d 815, 820

9    (9th Cir. 1997).  There does not appear to be cause to depart from this assumption here.

10         Regarding the notes, petitioner fails to indicate what information was included in

11   the notes or how it hurt his case, if it did.

12         Based on the above, petitioner has not shown that his Sixth or Fourteenth

13   Amendment rights have been violated.  Specifically, petitioner has not shown prejudice flowing

14   from counsel's alleged actions as petitioner must do to establish ineffective assistance of counsel

15   under the Sixth Amendment.  Petitioner has not shown that his trial was rendered arbitrary or

16   fundamentally unfair as a result of counsel's actions as petitioner must do to establish a violation

17   of the Due Process Clause of the Fourteenth Amendment.   Strickland, 466 U.S. at 693.  See

18   Jammal, 926 F.2d at 920.

19       D.  Juror Bias (Section 2)

20         Petitioner claims a juror, identified as juror #8, should have been dismissed by the

21   trial judge during voir dire as biased because the juror indicated:  (1) he was affiliated with the

22   Siskiyou County Sheriff's Department through his involvement with something called the

23   "Siskiyou County Arson Team;" and (2) that he knew one of the witnesses (Dave Young) who

24   also was employed by the sheriff.  Pet., Section 2 at 6-7; see RT 273:15-276:12.

25         The Sixth Amendment guarantees to the criminally accused a fair trial by a panel

26   of impartial and indifferent jurors.  Irvin v. Dowd, 366 U.S. 717, 722 (1961).  A juror need not be

1   ignorant of the facts and issues involved.  Id.  It is sufficient if the juror can lay aside his or her

2   impressions or opinions and render a verdict based on the evidence presented.  Id. at 723.  The

3   Ninth Circuit Court of Appeals has noted that courts have declined to find that a juror is biased

4   simply because a juror is acquainted with a witness.  Tinsley, 895 F.2d at 528-29.

5          In light of Irvin and Tinsley, the court cannot presume that juror #8 was biased

6   against petitioner because of his acquaintance with a witness and possibly other employees of the

7   Siskiyou County Sheriff's Department.  Furthermore, during voir dire, juror #8 specifically

8   indicated, under oath, that despite his affiliation with the Siskiyou County Sheriff's Department,

9   and his knowing witness Young, he could be fair and impartial.  It is thereby established for

10  purposes of these proceedings that juror #8 was not actually biased against petitioner.  RT

11  275:18-276:13.[11]

12         Petitioner also asserts that during the trial, juror #8 informed a bailiff that he

13  recognized a second witness.  The bailiff told juror #8 that the judge "did not have a problem

14  with that."  Pet., Section 2, Affidavit of Woodrow Schamel at 2.  It is not clear whether the bailiff

15  actually informed the court of the information provided by juror #8.  In any case, petitioner has

16  not shown juror #8 was biased as a result of merely recognizing a witness.

17         Finally, petitioner claims his trial counsel was ineffective for failing to ask that

18  juror #8 be excused during voir dire for cause or for failing to use a peremptory challenge on

19  juror #8.  Pet., Section 2 at 8-9.  However, in light of the foregoing, petitioner has not established

20  trial counsel acted unreasonably or that the actions of counsel rendered the result of petitioner's

21

22         [11]  In section two of his habeas application, petitioner provides the transcript of an
    interview between a private investigator and a person who claims to have spoken with juror #8
23  after trial.  Pet., Section 2, Ex. C.  The person told the investigator: "[Juror #8] said [']but I was
    real convinced that [the evidence against petitioner] was pretty water tight because Dave Young
24  is the evidence technician for Siskiyou County and I've known him and I know he does his job
    very thoroughly . . .'"  Id., Section 2, Ex. C at 5.  The court finds this unsworn and hearsay
25  statement is insufficient to overcome juror #8's assertion made under oath, and during voir dire,
    that juror #8 would base his decision only on the evidence presented, and, therefore, insufficient
26  to establish that juror #8 was actually prejudiced against petitioner.

1   trial unreliable, or the proceeding fundamentally unfair.[12]

2      E. Sentencing (Section 3)

3         1. Ex Post Facto

4         Petitioner's next claim is titled "Petitioner Was Denied Due Process Of Law At

5   Sentencing, Raising An Ex Post Facto Violation."  Pet., Section 3 at 7-10.  While petitioner's

6   argument is not clear, it appears petitioner claims that he should be re-sentenced under more

7   lenient sentencing laws enacted after he was actually sentenced.  Such a claim is frivolous.  See,

8   e.g., Rosenberg v. U.S., 346 U.S. 273, 290 (1953) (sentence in accord with law in existence at

9   time of criminal act is proper).

10        2. Due Process / Double Jeopardy

11        Petitioner also claims that his sentence violates the Double Jeopardy Clause of the

12  Fifth Amendment and the Due Process Clause of the Fourteenth Amendment because his

13  sentencing judge: (1) imposed the upper term of 11 years for manslaughter on the basis that

14  petitioner decided to arm himself with, and in fact used a gun; and (2) imposed a four-year

15  sentence enhancement under California Penal Code § 12022.5 for use of a firearm.[13]  Pet.,

16  Section 3 at 5-9.

17        a. Failure To Exhaust

18        Respondent argues that petitioner has failed to exhaust state court remedies with

19  ─────────────────

20      [12] Respondent asserts that petitioner's claims regarding juror #8 are procedurally
    defaulted.  The Supreme Court has found a district court may reach the merits of a habeas
21  petitioner's claim where, as here, the merits are "easily resolvable against the petitioner whereas
    the procedural-bar issue involve[s] complicated issues of state law."  Lambrix v. Singletary, 520
22  U.S. 518, 525 (1997); see also Kuhali v. Reno, 266 F.3d 93, 101 (2d Cir. 2001) ("It is well
    settled that the doctrine of procedural default is prudential rather than jurisdictional in nature.
23  E.g. Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2nd. Cir. 2000)
    ('The doctrine of procedural default is based on considerations of comity and finality, and not on
24  a jurisdictional limitation of the power of a federal court . . . to look beyond a state procedural
    default and consider the merits of a defaulted claim . . .'")).

25      [13] To the extent petitioner claims the trial court's dual use at sentencing of petitioner's
26  use of a firearm violates California law independently from any violation of federal law,
    petitioner's claims are not cognizable.  28 U.S.C. § 2254(a).

1  respect to this claim as petitioner is required to do under 28 U.S.C. § 2254(b)(1).  Respondent is

2  incorrect.  Petitioner presented this claim to the California Supreme Court on September 20,

3  2000, in asserting "direct violations of the petitioner's rights against being placed in Double

4  Jeopardy and of Due Process of Law, guaranteed under the U.S. Federal Constitution, 5th and

5  14th amendments."  Answer, Ex. L, "Addendum" at 9.  The claim was denied on January 30,

6  2001.  Answer, Ex. L at 1.

7  b.  Procedural Default

8  Respondent also asserts petitioner's claim is procedurally defaulted.  See Coleman

9  v. Thompson, 501 U.S. 722 (1991).  Respondent has waived this defense by failing to raise it in

10  his answer.  Franklin v. Johnson, 290 F.3d 1223, 1229 (9th Cir. 2002).  In any case, petitioner's

11  argument is not supported by the record.  Respondent asserts the California Court of Appeal held

12  petitioner's due process / double jeopardy claim waived on direct appeal because petitioner did

13  not assert this claim at sentencing.  Respondent argues that the Court of Appeal's refusing to

14  address petitioner's claim on procedural grounds precludes this court from addressing

15  petitioner's claim.  But petitioner did not raise his federal double jeopardy claim on direct appeal.

16  See Answer, Ex. A.  The double jeopardy / due process claim was raised through a subsequent

17  collateral action.  Answer, Ex. L, "Addendum" at 9.

18  c.  Petitioner's Claim

19  At sentencing, and based on the verdict handed down by petitioner's jury, the trial

20  court found petitioner guilty of voluntary manslaughter under California Penal Code § 190(2)(a).

21  RT 2669:17-20.  The court also found, based on the jury's verdict, that petitioner used a firearm

22  in committing manslaughter, thereby subjecting petitioner to additional punishment under

23  California Penal Code § 12022.5.  RT 2669:21-24.  The court proceeded to sentence petitioner

24  for voluntary manslaughter and the "gun use" enhancement.

25  First, the court sentenced petitioner for voluntary manslaughter.  RT 2671:8-

26  2673:17.  The court noted that petitioner was eligible for a sentence of either three, six or eleven

14

1 years, depending upon a balancing of aggravating and mitigating factors.  The court determined

2 that aggravating factors outweighed mitigating factors and, therefore, imposed a sentence of

3 eleven years.  RT 2673:12-17.  Specifically, the court found the existence of the following

4 aggravating factors:

5       [One,] the fact that the defendant had several opportunities to break
      off at least temporarily the prospect of a confrontation between
6       himself and the victim and failed to do so;

7       Second, the decision to be armed with a shotgun;

8       Third, the use of that shotgun without consideration of alternatives
      at the point where the killing, in [sic] occurred;
9

10       Next, the rather unusual conduct of defendant following the
      shooting; that is to say, the ride around with the young lady,

11       resuming work the following day and complete lack of any effort
      to determine what the results or consequences were of the shooting

12       were [sic] at the scene of the shooting itself.

13       And finally, efforts on the part of the defendant following the
      shooting to conceal evidence, including the weapon with which the
14       killing was done.

15 RT 2672:23-2673:11.  Mitigating factors included defendant's lack of prior criminal record,

16 contribution of third parties to the "situation when this tragedy finally occurred," and defendant's

17 methamphetamine use.  RT 2671:25-2672:8.

18       The court then sentenced petitioner on the firearm use enhancement.  RT 2673:18-

19 2674:4.  The court noted that the length of the sentence to be imposed for the firearm use

20 enhancement again depended upon the balancing of aggravating and mitigating factors.   RT

21 2673:18-22.  The court found that applicable factors in aggravation and mitigation were equal,

22 and expressly took into account that to apply the factors in aggravation would require a dual use

23 of the same facts, which would be in error.  The court thus imposed the middle term of

24 imprisonment of four years.  RT 2673:18-28, 2674:1-2.

25       Petitioner argues it was improper under the Double Jeopardy and Due Process

26 Clauses for the trial court, in sentencing petitioner to eleven years for voluntary manslaughter, to

1  consider the three firearm-related aggravating factors identified above because those factors led

2  to the finding that petitioner's sentence should be enhanced under California Penal Code

3  § 12022.5.  Petitioner asserts that if the three factors are set aside, the aggravating factors no

4  longer outweigh the mitigating factors.[14]

5           The court finds that petitioner's sentence for voluntary manslaughter was not

6  elevated based on facts underlying the § 12022.5 enhancement.  Deciding to arm oneself with a

7  gun, failing to consider alternatives to using a gun to kill someone, and hiding a gun after a crime

8  was committed all are distinct acts from using a gun to actually kill someone.  This conclusion is

9  supported by the fact that the trial judge specifically indicated at the end of petitioner's

10  sentencing hearing that he did not give petitioner the maximum sentence for voluntary

11  manslaughter based on the fact of petitioner's "actual firearm use" to kill Sean Burbary.  RT

12  2675:22-26.  Because the factual premise put forth in support of petitioner's due process / double

13  jeopardy claim is not based on a fair reading of the record, the claim should be rejected.

14           F.  Newly Discovered Evidence (Section 4)

15           Petitioner asks for a new trial, to be re-sentenced, or to have his conviction

16  reduced to involuntary manslaughter based on a declaration of David Teran.  Pet., Section 4 at

17  12-15.  Claims regarding new evidence are not cognizable absent an underlying Constitutional

18  violation.  Herrera v. Collins, 506 U.S. 390, 400 (1993).  In his traverse, petitioner appears to

19  assert ineffective assistance of counsel as the only possible federal basis for his new evidence

20  claim; ineffective assistance also is advanced in petitioner's December 22, 2004 motion to

21  expand the record.  Traverse at 58:1-4; Mot. to Expand, Ex. 5 at 3:16-4:1.  However, petitioner

22  has not shown that trial counsel was aware of the contents of the Teran declaration or that he

23  reasonably could have been.  The "newly discovered" information supposedly was learned by

24

25          [14] The trial court observed, however, that its weighing of the factors was not simply a
matter of mechanically counting up the numbers of factors in aggravation and comparing it to the
26  number in mitigation.  RT 2671:18-22.

Teran after he testified at trial and still is disputed by Randy Long.  Pet., Section 4 at 12; Mot. to Expand, Ex. 5.

Petitioner fails to show that the failure to present the information in the Teran affidavit at trial was due to a violation of the Constitution or other federal law.  His newly discovered evidence claim thus must be rejected.[15]

G.  Section 5

Petitioner's final claims, which appear in section 5 of his habeas application, concern a post-trial hearing that occurred in 1999, under California Code of Civil Procedure § 237,[16] at which petitioner sought release of information so that he could contact all jurors

---

[15]  In any case, the testimony identified by Teran in his declaration likely would have been subject to credibility challenges and the information provided is not likely to have changed the outcome of petitioner's trial.  Teran indicates that he met petitioner in prison in 2000.  Teran's story now is that Randy Long admitted to Teran, after Teran testified at trial, that Long took a gun from the scene of the shooting and sold it.  Pet., Section 4 at 13.  This is disputed by Long, although petitioner's investigator believes Long is lying, Mot. to Expand, Ex. 5, ¶¶ 5-6, and is not corroborated by anything other than information from the other three "witnesses" who were incarcerated concurrently with petitioner in the county jail.

[16]  Section 237 provides, in pertinent part:

(a) (1) The names of qualified jurors drawn from the qualified juror list for the superior court shall be made available to the public upon request unless the court determines that a compelling interest, as defined in subdivision (b), requires that this information should be kept confidential or its use limited in whole or in part.

(2) Upon the recording of a jury's verdict in a criminal jury proceeding, the court's record of personal juror identifying information of trial jurors, as defined in Section 194, consisting of names, addresses, and telephone numbers, shall be sealed until further order of the court as provided by this section.

. . . . . . . . . . . .

(b) Any person may petition the court for access to these records. The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror

empaneled for his trial.  Pet., Section 5 at 5-6.  Petitioner sought release of the information to

develop evidence to show that the jurors were subjected to improper influence during

deliberations.  Id., Section 5 at 19.  At the hearing set by the court, several jurors attended in

person; others provided written responses to the court's notice of hearing.

At the hearing, which was closed, the court examined jurors present, and provided

counsel an opportunity to examine them as well.  Petitioner claims that the court abused its

identifying information, but shall not set the matter for hearing if
there is a showing on the record of facts that establish a compelling
interest against disclosure. A compelling interest includes, but is
not limited to, protecting jurors from threats or danger of physical
harm. If the court does not set the matter for hearing, the court shall
by minute order set forth the reasons and make express findings
either of a lack of a prima facie showing of good cause or the
presence of a compelling interest against disclosure.

(c) If a hearing is set pursuant to subdivision (b), the petitioner
shall provide notice of the petition and the time and place of the
hearing at least 20 days prior to the date of the hearing to the
parties in the criminal action. The court shall provide notice to
each affected former juror by personal service or by first-class
mail, addressed to the last known address of the former juror as
shown in the records of the court. . . . . . Any affected former juror
may appear in person, in writing, by telephone, or by counsel to
protest the granting of the petition. A former juror who wishes to
appear at the hearing to oppose the unsealing of the personal juror
identifying information may request the court to close the hearing
in order to protect the former juror's anonymity.

(d) After the hearing, the records shall be made available as
requested in the petition, unless a former juror's protest to the
granting of the petition is sustained. The court shall sustain the
protest of the former juror if, in the discretion of the court, the
petitioner fails to show good cause, the record establishes the
presence of a compelling interest against disclosure as defined in
subdivision (b), or the juror is unwilling to be contacted by the
petitioner. The court shall set forth reasons and make express
findings to support the granting or denying of the petition to
disclose. . . . . .

discretion in letting the jurors who attended the hearing know that their testimony could lead to a motion for a new trial, and also in the order following the hearing by failing to direct that petitioner be provided with contact information for all the jurors. Id., Section 5 at 1. The California Court of Appeal rejected this claim. Id., Section 5 at 8-9.

While petitioner avers that this claim is grounded in due process, and cites the Fifth, Sixth and Fourteenth Amendments as authority, he cites to no additional law and provides no further discussion of the facts supporting the notion that the court's determination of his motion after a noticed hearing violated clearly established federal law. Thus, petitioner has not met his burden of showing that he is entitled to habeas relief on this claim. See 28 U.S.C. § 2254(d); Woodford, 537 U.S. at 25.

Petitioner also claims he received ineffective assistance of counsel at the hearing because his counsel failed to examine all jurors present. However, ineffective assistance of counsel during collateral post-conviction proceedings is not a proper ground for federal habeas relief. 28 U.S.C. § 2254(I). In any case, there is nothing in the record to suggest that the outcome of the § 237 proceedings would have been any different had counsel questioned the jurors as petitioner suggests he should have.

V. Conclusion

Based on the foregoing, the court finds that, with respect to all of the claims presented by petitioner in this action, petitioner has not shown that the adjudication of his claims by California courts: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The court therefore will recommend that petitioner's application for writ of habeas corpus be denied.

IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be denied.

1       These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

3   after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6   shall be served and filed within five days after service of the objections.  The parties are advised

7   that failure to file objections within the specified time may waive the right to appeal the District

8   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9   DATED:  August 15, 2005.

10

11

12                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25   1

26   kirc0495.157(b)